**THE BALL LAW FIRM APC**
Byron T. Ball (State Bar No. 150195)
Tatev Oganyan (State Bar No. 320344)
100 Wilshire Boulevard Suite 700
Santa Monica, CA 90401
Email: btb@balllawllp.com

**STAHL LAW CORPORATION**
Lukas M Stahl (State Bar No. 290688)
100 Wilshire Boulevard Suite 700
Santa Monica, CA 90401
Email: lms@stahllaw.com

*Attorneys for Plaintiff Franz Haas GmbH/srl ("Franz Haas"),*
*an Italian Limited Liability Company,*
*authorized to do business in the state of California.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANZ HAAS GmbH/srl, an Italian Limited Liability Company, authorized to do business as a California LLC.,<br><br>Plaintiff,<br><br>vs.<br><br>WINEBOW INC, a Delaware corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | **CASE NO:** 2:24-cv-04431<br><br>**COMPLAINT FOR:**<br><br>1. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>3. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**<br>4. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>5. **VIOLATION OF U.S.C. 1114 (1)**<br>6. **VIOLATION OF U.S.C. 1125 (A)**<br><br>**UNLIMITED CIVIL JURISDICTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Franz Haas FRANZ HAAS GmbH/srl, an Italian Limited Liability Company, authorized to

do business as a Carifornia L.L.C., ("Plaintiff") complains of defendants Winebow Inc.,

a Delaware Corporation doing business in the county of Los Angeles, state of California ("Defendant"), and Does 1-50 and each of them and allege as follows:

## PARTIES AND PREFATORY ALLEGATIONS

1.      Plaintiff is now, at all relevant times herein mentioned, is an Italian LLC authorized to do and doing business as a California LLC which is doing business in the state of California, county of Los Angeles. Plaintiff is a manufacturer of fine wines.

2.      Defendant is now and at all relevant times herein mentioned has been a Delaware corporation authorized to do and doing business in the state of California, county of Los Angeles. Defendant acted as a distributor for Plaintiff's wines throughout the United States.

3.       Plaintiff is unaware of the true names and capacities of Defendants named herein as DOES 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names.  Plaintiff will seek leave of Court to amend this Complaint to allege the true names and capacities of said Defendants when they are ascertained. Plaintiff is informed and believe and thereon allege that each of the aforesaid fictitiously named Defendants are responsible in some manner for the happenings and occurrences alleged herein.

4.       At all said times each Defendant was the agent of each other Defendant, and was acting within the course and scope of said agency. Each Defendant was also in a joint venture with every other Defendant so as to render all Defendants vicariously liable for the torts of one another to Plaintiff. Plaintiff is further informed and believes and thereon allege that at all times, the conduct of each of the aforesaid named and fictitiously named Defendants was ratified by each other and all defendants are the alter ego of each other.

5.      Plaintiff is further informed and believes and thereon allege that Defendants knew of and/or ratified each of the other Defendants' conduct as herein alleged.

## JURISDICTION

6. This Court has personal jurisdiction over this matter as the Defendant has purposefully availed itself of California laws by conducting substantial business in California with offices in California and distributing Plaintiff's wines and its own product in the state of California, county of Los Angeles. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000. The Court also has subject matter jurisdiction pursuant to the Lanham Act claims asserted herein. The Court is the proper venue as the parties engaged in business transactions in the state and the ongoing interactions between the parties will be occurring in this State.

## FACTUAL BACKGROUND

### The Arbitration In Italy Rules in Favor of Plaintiff And Concluded Plaintiff Properly Terminated The Supply Agreement With Defendant.

7. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-6 as though full set forth herein.

8. Plaintiff is a manufacturer of fine wines in the Republic of Italy and has a profitable and successful business throughout the world including the United States.

9. Defendant was a distributor for Plaintiff until on or about October 24, 2021, when Plaintiff lawfully terminated the Supply Agreement with Defendant, followed by Defendant commencing arbitration against Plaintiff pursuant to the terms of their Supply Agreement in Italy.

10. The parties entered into a binding arbitration concerning their dispute and pursuant to the arbitration panel ruling an award was entered in favor of Plaintiff and against Defendant which will be domesticated in the United States. Plaintiff will file a request for judicial notice of the arbitration award which provides, in pertinent part:

"According to the above-referenced observations, the Arbitration Tribunal accepts the

question of Franz Haas and declares the Contract between the parties dissolved on October 24, 2021. Consequently, the Tribunal orders Winebow Inc. to return all the marketing and advertising material related the wines labels with the Trademark and each other related document that was given to Winebow by Franz Haas [and to] Make sure that the already ordered products that either in the US storehouses or in the Italian storehouses are entirely sold on the Territory via the distribution by the distribution channels that have been used so far or different ones with the same standard and iii. Ceases to introduce themselves as Franz Haas as exclusive importer once the products are totally sold." Id.

11. Therefore, by operation of law, the Court may take judicial notice of the Tribunal's ruling and find in this case that the Supply Agreement was lawfully terminated by Plaintiff on October 24, 2021, and that Defendant is required by operation of law to comply with the Tribunal's Order set forth hereinabove.

**Defendant's Tortious Interference With Plaintiff's Contracts and Economic Advantage**

12. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1-11 as though fully set forth herein.

13. By way of example of Defendant's tortious interference with Plaintiff's contractual relations and economic advantage, Plaintiff entered into a new contract with RTM Imports, LLC ("RTM") for importing KRIS wines into the United States. Plaintiff also entered into new distribution agreements for various markets across the United States. Plaintiff expressly alleges that Defendants interfered with Plaintiff's contractual relationship, and specifically pleads intentional torts committed in the United States in this matter and does not allege breach of contract claims which was adjudicated in the Italian Arbitration. Therefore, this forum is the proper Court for the adjudication of the claims alleged herein as there exists personal jurisdiction, subjection matter jurisdiction, and proper venue.

14. Despite having no further rights under the Supply Agreement since October 24, 2021, Defendant has persisted in its intentional, tortious interference with Defendant's business in California and the rest of the United States, after October 24, 2021.

15. Despite having no further rights under the Supply Agreement since October 24, 2021, and even after the arbitration award confirming that termination was rendered on June 27, 2023, Defendant persisted in its intentional, tortious interference with Defendant's business in California and the rest of the United States. For example, Defendant refused to accept the Supply Agreement's termination, and claimed instead that the Supply Agreement automatically renewed through October 2026. To avoid supporting that false claim and potentially waiving the Supply Agreement's termination, Plaintiff was forced to suspend execution and shipment of all US purchase orders for KRIS wines received after that date.

16. Defendant further impaired KRIS wine sales in the United States by threatening USA Wine West, LLC ("UWW") with legal action if UWW correctly treated the Supply Agreement as terminated.

17. Defendant's position and posture at all times herein mentioned firmly and without legal or factual support as evidenced by the Arbitration award that the Supply Agreement could only be terminated for good cause, and also falsely claimed that in sum and substance that the Supply Agreement remains in force and Winebow continues to maintain exclusive rights to import Kris Wines throughout the United States. Wrong.
As a direct result of that letter to UWW, UWW ceased negotiations with Plaintiff thereby causing Plaintiff reasonably foreseeable and substantial damage.

18. Plaintiff subsequently reached an import agreement with RTM, but only by indemnifying RTM and posting a $100,000 escrow to secure that indemnification because Defendant made similar threats to RTM. RTM depleted those funds in the amount of US$ 75,000 while responding to Defendant's harassment.

- 5 -
COMPLAINT FOR DAMAGES

19. As a result of Defendant's misconduct, Plaintiff had no US sales between October 25, 2021 and January 20, 2022, which translates to approximately 37,000 cases of lost wine sales worth more than $2,000,000 at the price of $55.20 per case. Even after Plaintiff's US sales resumed, those sales were crippled by Defendant's obstruction of Plaintiff's distribution partners seeking new regulatory clearances in Delaware, Virginia, North Carolina, Georgia, Michigan, West Virginia, Montana, Idaho, Utah and Maine. Based on the effective sales in the period of 2015 to 2021 Franz Haas has exported an average 290,000 cases per year. Due to Defendant's actions and obstruction in these states, Plaintiff lost in subsequent years 2022 and 2023, sales in the amount of 283,000 cases, an estimated $15.6 million in additional sales. In addition, following the same calculation, subsequent losses as 2024, are estimated to amount to no less than an additional US$ 30 million.

20. Because Defendant refused to accept the Supply Agreement's termination and continues to refuse to accept its termination following the binding arbitration ruling in Italy on this precise issue, Defendant filed to deplete the ordered quantities, resulting in nearly $120,000.00 in expenses incurred by Plaintiff to relabel the bottles Winebow filed to deplete. Other, more significant losses (such as taking into account increases in prices over subsequent years, loss in compounded growth, legal fees, relabeling costs, damage to the brand value, loss of sales momentum and costs of restarting throughout the US market) are still being calculated.

21. Plaintiff has a valid contract with RTM for the import of Kris Wines into the United States. Defendant willfully and intentionally interfered with that contract, proximately causing injury to Plaintiff. Plaintiff incurred actual damage or loss as a result.

22. Plaintiff has valid distribution contracts with Opici Wines & Spirits ("Opici"). Defendant willfully and intentionally interfered with those contracts, proximately causing injury to Plaintiff. Plaintiff incurred actual damage or loss as a result.

23. There was a reasonable probability that Plaintiff would have entered into a business relationship with UWW. Defendant intentionally interfered with the relationship, and Defendant's

- 6 -
COMPLAINT FOR DAMAGES

conduct was independently tortious or unlawful separate and apart from the contract between the parties that was the subject of the arbitration in Italy. This interference proximately caused Plaintiff injury, and Plaintiff suffered actual damage or loss as a result.

24. In short, Defendant interfered with Plaintiff's existing and prospective customers because it refused to abide by the lawful termination of the supply agreement, and continues to do so even after the Italian award, all of which acts and omissions prevented Plaintiff from doing business in states throughout the United States as on a state by state basis states with some sort of franchise laws such as for instance Alabama, Arkansas, Connecticut, Delaware, Georgia, Idaho, Kansas, Maine, Massachusetts, Michigan, Missouri, Montana, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Tennessee, Vermont, Virginia, Washington and Wisconsin, so-called "franchise states" or "control states", only permit one distributor at a time to distribute Plaintiff's product to the end consumer. Defendant continued to be in breach of its obligations to fully release all states until February 2024.

25. Further, the above alleged damages do not take into account the loss of business opportunities in chain businesses on- and off-premise related to the blocked states, which represent 90% of the Kris business. It does not take into account the promotions, ie. price reductions in their sell-off, executed by Winebow in markets like NJ, which is dual and which was strictly agreed and prohibited according to art. 23 of the supply agreement. It does not take into account Winebow's actions affecting the sales and business opportunities of the states in which Plaintiff managed to transition to RTM and therefore Plaintiff struggled to reach the same sales pace.

26. Plaintiff in 2022 sold only 147,355 cases compared to the 234,306 cases sold to Winebow in 2021, and is still suffering with the sales for the current year having sold just above 100,000 cases to date. The main reason for the decline is due to the above mentioned blocked states, however after three months of complete market absence it was an overall issue to restart. This year Plaintiff will close with 120,000 cases of shipments/sales, instead of 230,000 or more.

27. In particular, none of this takes into account the personal damages to the family, management and employees of Franz Haas whose owner Franz Haas sen. passed away from a heart attack no longer bearing the stress brought upon him personally.

28. Therefore, Defendant's acts and omissions prevented Plaintiff from selling its wine in many states throughout the United States all of which caused substantial eight figure economic damage to Plaintiff in an amount according to proof at time of trial but well in excess of the jurisdictional minimum of this Court.

29. Further Defendants have blatantly refused to comply with the balance of the Tribunal's Order set forth above and refuse to date to return the marketing materials and cease representing itself as the exclusive distributor of Franz Haas, moreover, return the interest in the KRIS trademark, all login data for the access to the URL www.kriswine.com and with no further delay as well as the login data for all KRIS social media handles.

**FIRST CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH CONTRACT**

(Plaintiff against Defendant and Does 1-50)

30. Plaintiff re-alleges and incorporate as if fully stated herein each and every allegation contained above in paragraphs 1 through 29 and incorporates the same herein by this reference as though set forth in full.

31. Defendants and each of them, knew of the existence of the import and distribution agreements between Plaintiff and its customers ("Customer Contracts"). They knew the terms, the details, and the relationship between Plaintiff and its customers with respect to the Customer Contracts.

32. Notwithstanding Defendants knowledge of the existence of the Customer Contracts, they decided to interfere with such agreements with the intent to harm Plaintiff's business and avoid the lawful termination of the Supply Agreement by Plaintiff to further its own economic interests.

33. As a direct and proximate result of Defendant's intentional and tortious interference with the interference agreements, Plaintiff sustained damages according to proof at time of trial.

34. Defendants knew and still know that its willful and tortious interference with the Customer Contracts created a high probability of damage to Plaintiff's business enterprises and such damages continue to accrue to date in an amount according to proof at time of trial.

35. Defendant's willful and intentional interference with Plaintiff's Customer Contracts did and continue to prevent Plaintiff's performance of its obligations under its Customer Contracts.

36. Defendant's acts and omissions and willful violation of the Tribunals Order set forth above were undertaken with fraud, oppression, malice and reckless disregard for the Tribunal's Order and the rights of Plaintiff and caused Plaintiff reasonably foreseeable economic damage thereby entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Plaintiff against Defendant and Does 1-50)

37. Plaintiff re-alleges and incorporates as if fully stated herein every allegation contained above in paragraph 1 through 36 and incorporates the same herein by this reference as though set forth in full.

38. At all times relevant herein mentioned Plaintiff had existing Customer Contracts and prospective customer contracts that contained a high probability of economic benefit to Plaintiff.

39. At all times relevant herein mentioned Defendant knew of Plaintiff's relationship with its customers under the Customer Contracts and prospective customer contracts and that such agreements contained existing and prospective profits, considerable amounts of future earnings in play, and yet Defendant elected to interfere with the Customer Contracts by refusing to accept the lawful termination of the Supply Agreement on October 24, 2021 all of which rises to the level of malice, fraud and oppression.

40.     At all times relevant herein mentioned Defendant knew not only of Plaintiff's Customer Contracts but of Plaintiff's agreements and business dealings with other of its customers in the wine business. and that such agreements contained existing and prospective profits, considerable amounts of future earnings in play and economic benefits to Plaintiff, and yet Defendant intentional elected to interfere with these economic relationships and prospective economic advantage by refusing to accept the lawful termination of the Supply Agreement on October 24, 2021 all of which rises to the level of malice, fraud and oppression.

41.     Defendant engaged in wrongful conduct by intentionally interfering with Plaintiff's existing and prospective Customer Contract and agreements for its personal financial gain and to harm Plaintiff's business operations.

42.     As a direct and proximate result of the intentional interference with prospective economic advantage, Plaintiff has sustained economic damages in an amount according to proof at time of trial but in excess of the jurisdictional minimum of this Court.

43.     Plaintiff's prospective relationship and economic success with its customers was in fact interfered with by virtue of Defendant's acts and omissions set forth herein and the damages sustained by Plaintiff were reasonable foreseeable at all relevant times herein mentioned.

44.     Defendants, and each of them, have been guilty of oppression and willful misconduct in doing the things alleged herein by reason of which Plaintiff is entitled to an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION

### (VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE 17200)

(By Plaintiff against Defendant and Does 1-50)

45.     Plaintiff re-alleges and incorporates as if fully stated herein every allegation contained above in paragraph 1 through 44 and incorporates the same herein by this reference as though set forth in full.

46. California Business and Professions Code Section 17200 ("UCL") prohibits the unlawful, unfair and/or fraudulent business practices. The UCL imposes strict liability. Plaintiff need not prove that Defendant engaged in intentional, negligent or fraudulent conduct only that such practices occurred.

    a. A business act or practice is unfair under the UCL if it offends an established public policy or if it is immoral, unethical, oppressive or unscrupulous to consumers and unfairness is determined by weighing the reasons, justifications, and motivates of the practice against the gravity of harm to the alleged victims.

    b. A business act is fraudulent under the UCL if it is likely to deceive members of the consuming public.

    c. A business act is unlawful under the UCL if it violates any other law or regulation.

47. Plaintiff lawfully terminated the Supply Agreement as of October 24, 2021 which terminated all right, title, and interest Defendant owned under the Supply Agreement.

48. Notwithstanding Plaintiff's lawful termination of the Supply Agreement, Defendant interfered with Plaintiff's existing and prospective Customer Contracts and other contracts between Plaintiff and its customers and continue to do so to the present date even after the Tribunal's Order of July 27, 2023.

49. Notwithstanding the Tribunal's Order of July 27, 2023 requiring Defendant to return all sales, marketing, and promotional materials given to Defendants by Plaintiffs, to cease and desist from representing itself as the exclusive distributor for Franz Haas, and to sell all product in storehouses henceforth, Defendants have refused and still refuse to this date to follow the Order. Rather, they continue to represent to the Plaintiff's customers, the public and consumers in the United States, that they are the exclusive distributor of Frans Haas' wine products in the United States, that they own 49% of the trademark pursuant to a Trademark Agreement between the parties, and continue to refuse to sell all existing product and return all sales and marketing materials,

including but not limited to all social media handles, website URLs, eMail accounts or any other means of electronic communication including the "KRIS" or "Franz Haas" brand, provided to Defendant by Plaintiff.

50. Defendant's acts and omissions as set forth above constitute unfair, unlawful, and fraudulent conduct undertaken for the singular purpose to gain an unfair competitive advantage over Plaintiff in the use, distribution and sale of Plaintiff's wine products, and to are undertaken with the intent to deceive Plaintiff's existing and prospective customers and the consumer public at large. Further, by engaging in such unlawful, unfair, and fraudulent acts and omissions, Defendant has received monies and value that should have been paid to Plaintiff and therefore Plaintiff is entitled restitution. Such acts and omissions constitute a violation of California Business & Professions Code Section 17200 and allow for Plaintiff to obtain the statutorily permissible equitable remedies of restitution and for the issuance of a permanent injunction requiring Defendant's to abide by the terms of the Tribunal's Order.

## FOURTH CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(By Plaintiff Against Defendant and Does 1-50)

51. Plaintiff re-alleges and incorporates as if fully stated herein every allegation contained above in paragraph 1 through 50 and incorporates the same herein by this reference as though set forth in full.

52. Plaintiff and its Customer Contracts had and still have an economic relationship that probably would have resulted in an economic benefit to Plaintiff.

53. Defendant knew or should have known that Plaintiff had such economic relationships with its Customer Contacts.

54. Defendant knew or should have known that Plaintiff's economic relationship with its

THE BALL LAW FIRM

Customer Contacts would be disrupted by failing to exercise reasonable care and in engaging in the acts and omissions set forth hereinabove and incorporated herein by reference.

55.   Defendant failed to act with reasonable care by refusing to acknowledge the lawful termination of the Supply Agreement by Plaintiff in October 2021 to the present date and by failing to abide by the Tribunal's Order including without limitation the refusal to return all sales and marketing materials, refusal to sell all existing inventory, and refusal to cease and desist from representing itself as the exclusive distributor for Plaintiff in the United States.

56.   At all times relevant herein mentioned Defendant knew or should have known that Plaintiff's agreements with its Customer Contracts and business dealings with other of its customers in the wine business contained existing and prospective profits, considerable amounts of future earnings in play and economic benefits to Plaintiff.

57.   Defendant's failure to exercise reasonable care was wrongful and was and is the direct and proximate cause of Plaintiff's economic damages and such damages were reasonably foreseeable at all times relevant herein mentioned in an amount according to proof at time of trial but in excess of the jurisdictional minimum of this Court.

**FIFTH CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT**

**PURSUANT 15 U.S.C. 1125**

(Plaintiff against Defendant and Does 1-50)

58.   Plaintiff re-alleges and incorporates as if fully stated herein every allegation contained above in paragraph 1 through 57 and incorporates the same herein by this reference as though set forth in full.

59.   Plaintiff owns a controlling interest in the federal registrations for the Trademarks bearing US Registration No 2570718 and 3630759 ("Trademarks").

60.   These Trademarks are for the wordmarks "KRIS", one including the graphic elements

used on the wine labels, registered in US Classes 47 and 49 and international class 33 for wines and sparkling wines.

61. These registrations are in full force and effect and enforceable and constitute a legally protectible interest.

62. Pursuant to the "Deed Agreement", dated October 24, 2006 Winebow Inc. was assigned a 49% interest in the KRIS Wordmark with US Registration Number 2570718 on or about January 24, 2007 and in KRIS Wordmark with US Registration Number 3630759 on or about January 14, 2009.

63. Starting June 14, 2010, Winebow Inc, encumbered its 49% interest in the respective Trademarks without the knowledge and consent of Plaintiff to numerous financial institutions 27 (twenty seven) times for the purpose of collateralization of financing until they were found out by Plaintiff in August 2021 and only when caught *in flagranti* with unclean hands they hurried to obtain releases on or about September 3, 2021 from their respective latest financing provider. However, since then no assurances have been received from Winebow, Inc. that those Trademarks remained unencumbered.

64. Pursuant to Article 7 of the "Deed Agreement" between the parties governing the Trademark, the return of the Kris Trademark is required if Defendant collects less than 80,000 cases in any given year and the Trademark must be returned no later than December 30 of the following year.

65. Pursuant to the lawful termination of the Supply Agreement, Defendants have failed to collect 80,000 cases in the following time periods: 2022.

66. Notwithstanding Plaintiff's controlling ownership of the Trademark, and Defendant's failure to meet its contractually required production of 80,000 cases annually which required the return of the Trademark ownership to 100% to Plaintiff, Defendant knowingly cooperated, encouraged, aided and abetted the infringement of Plaintiff's Trademark through its business

operations, distribution practices, on line and in person marketing and sales practices by representing to Plaintiff's Customer Contacts and the consuming public at large that it was the exclusive distributor in the US for Plaintiff's wines covered by and through its Trademark when such was not true in fact and by operation of law.

67. There is a substantial likelihood that Defendant's acts and omissions with respect to its "ownership" of the Trademark will cause a likelihood of substantial confusion to the consumers in California as to the origin, ownership, source, quality, and affiliation of the parties with respect to the wines they are purchasing.

68. Plaintiff will continue to be damaged by Defendant's unlawful conduct and infringement of its Trademark rights in an amount according to proof at time of trial.

69. Defendant's conduct has caused irreparable harm to Plaintiff and unless enjoined will continue to cause further irreparable and incalculable injury for which Plaintiff has no adequate remedy at law.

70. Plaintiff is entitled the range of relief including but not limited to injunctive relief, compensatory damages, statutory damages, punitive damages and attorneys' fees.

71. Defendant's conduct has caused irreparable harm to Plaintiff and unless enjoined will continue to cause further irreparable and incalculable injury for which Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

**On The First and Second Causes of Action**

1. For special damages in an amount to be determined by proof at trial;

2. For punitive damages as permitted by law;

**On The Third Cause of Action**

3. For restitution;

4. For a permanent injunction requiring Defendant to abide by the express terms of the Tribunal's Order;

**On The Fourth Cause of Action**

5. Special and economic damages in an amount to be determined by proof at trial;

**On The Fifth Cause of Action**

6. For compensatory damages;

7. Disgorgement of Defendant's profits;

8. Accounting;

9. Attorneys' fees;

10. A permanent injunction mandating that Defendants execute the required documents to return 100% ownership of the Trademarks to Plaintiff; return all sales and marketing materials, including but not limited to all social media handles, website URLs, eMail accounts or any other means of electronic communication including the "KRIS" or "Franz Haas" brand, provided to Defendant by Plaintiff.

**On All Causes of Action**

11. For costs of suit;

12. For such other and further relief as the Court deems just and proper.

DATED:  May 28th, 2024　　　　　　　　　　　THE BALL LAW FIRM APC
　　　　　　　　　　　　　　　　　　　　　　By: /s/ Byron T. Ball
　　　　　　　　　　　　　　　　　　　　　　BYRON T. BALL
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　FRANZ HAAS

DATED:  May 28th, 2024　　　　　　　　　　　STAHL LAW CORPORATION
　　　　　　　　　　　　　　　　　　　　　　By: /s/ Lukas M. Stahl
　　　　　　　　　　　　　　　　　　　　　　LUKAS M. STAHL
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　FRANZ HAAS

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

DATED: May 28th, 2024                    THE BALL LAW FIRM APC
                                         By: /s/ Byron T. Ball
                                         BYRON T. BALL
                                         Attorneys for Plaintiff
                                         FRANZ HAAS

DATED: May 28th, 2024                    STAHL LAW CORPORATION
                                         By: /s/ Lukas M. Stahl
                                         LUKAS M. STAHL
                                         Attorneys for Plaintiff
                                         FRANZ HAAS

THE BALL LAW FIRM